# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| **HUSSAM AHRESHIEN,** | CASE NO. 3:26 CV 45 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **WARDEN TOM WATSON, et al.,** | **MEMORANDUM OPINION AND** |
| Defendants. | **ORDER** |

### INTRODUCTION

Defendants' Motion to Dismiss (Doc. 4) is now before the Court. *Pro se* Plaintiff Hussam Ahreshien, a former inmate at the North Central Correctional Institution, filed this civil rights action under 42 U.S.C. §§ 1983 and 1985 against North Central Correctional Institution Warden Tom Watson, Deputy Warden Craig, Prison Inspector Schuler, Dorm Marion C/D Case Manager Kelly Emptage, and two unidentified corrections officers. *See* Doc. 1, at 2, 13. The Ohio Department of Rehabilitation and Correction indicates he was released on post-release control on July 21, 2025. *See* Offender Search, Ohio Dep't of Rehab. & Corr., *available at* https://appgateway.drc.ohio.gov/OffenderSearch.

Plaintiff claims that, while incarcerated, the detective who arrested him in 2018 and the prosecutor who secured his conviction in 2019 attempted to have him murdered in prison after learning from a jailhouse lawyer he was going to amend his federal habeas corpus petition to include a *Brady* claim.[1] *See* Doc. 1, at 15-38. He brings a claim of denial of access to the courts

---

1. *See Brady v. Maryland*, 373 U.S. 83 (1963).

under the First Amendment and a claim under 42 U.S.C. § 1985 for conspiracy to deny him access to the courts. *See id.* at 3, 12-13. He seeks $ 900,000.00 in damages. *Id.* at 39. Defendants assert the Complaint should be dismissed because it contains no allegations pertaining to them and fails to meet the basic pleading standard for either claim. *See* Doc. 4. For the reasons set forth below, the Court agrees.

## BACKGROUND

Plaintiff was convicted by a jury on June 20, 2019, in the Lucas County Court of Common Pleas on charges of abduction, domestic violence, and rape. He was sentenced on July 26, 2019, to a total of seven years of incarceration.

Plaintiff filed a direct appeal of his conviction through counsel. (Doc. 1, at 16).[2] While that appeal was pending, Plaintiff met a "jailhouse lawyer" who he believed to be knowledgeable in the law. *Id.* When the appellate court affirmed his conviction, Plaintiff sought the assistance of this "jailhouse lawyer" to file his remaining direct appeal and petition for state court post-conviction remedies. *Id.*

Plaintiff also asked the jailhouse lawyer to help him prepare his federal habeas petition. *Id.* He received the Return of Writ from the Respondent on August 11, 2023, which asserted that his ineffective assistance of counsel claim in Ground One of his Petition was procedurally defaulted. *Id.* at 17. Plaintiff brought the Return of Writ to the "jailhouse lawyer" to discuss the procedural default and discovered the "jailhouse lawyer" presented claims of ineffective assistance of counsel in the habeas petition that Plaintiff had not asserted on direct appeal. *Id.* He indicates that he then realized he could not rely completely on the jailhouse lawyer due to his limited knowledge of habeas corpus law. *Id.*

---

2. The Court cites to the ECF page number, not the internal document pagination.

Plaintiff retained counsel to attempt to get a new trial in state court; the attorney also agreed to assist with the federal habeas litigation. *Id.* at 18. Plaintiff informed the "jailhouse lawyer" that he had retained counsel and thanked him for his prior assistance. *Id.* Plaintiff nevertheless continued to consult with the "jailhouse lawyer," because he found he could receive information faster than he could by sending correspondence to his attorney. *Id.* at 20.

One of the issues upon which Plaintiff sought guidance from the "jailhouse lawyer" was his attempt to amend his habeas petition to include a *Brady* claim. *Id.* Plaintiff contends the state withheld information regarding a key witness's cell phone texts which asserts are exculpatory. *Id.* Plaintiff wanted to amend his petition to separately include such a claim. *Id.* He indicates that he gave the "jailhouse lawyer" copies of his original habeas petition pretrial materials so that they could discuss his options. *Id.* Plaintiff's retained attorney ultimately withdrew from the federal habeas case, stating that "Petitioner had prepared a detailed filing which he now elects to file pro se.". *See Ahreshien v. Watson*, No. 22 CV 1303 (N.D. Ohio) (Doc. 32) (Feb. 8, 2024). Although Plaintiff filed multiple Motions, including a Motion to Amend his Habeas Petition, which was granted, he did not file a Traverse or an Amended Petition. *See id.* (Docs. 33, 35)

Plaintiff alleges when he later approached the "jailhouse lawyer," the inmate vehemently denied having received copies of his case materials. (Doc. 1, at 26). Plaintiff walked away rather than engage in an argument. *Id.* He contends this inmate is the only person in the prison to whom he confided his legal strategy. *Id.* at 28. He states that the "jailhouse lawyer" had multiple meetings with "prison officials," and he assumes the purpose of those meetings was to discuss his habeas petition. *Id.*

Plaintiff claims that, on January 7, 2024, he believed he was going to be assaulted by other inmates. *Id.* at 29. He does not indicate why he believed this was the case. *Id.* "[H]e had no problem

with any inmate(s) in the entire prison that would prompt the inmate(s) to attack him." *Id.* He states he took preventive actions on January 7 and January 8 to avoid placing himself in danger, including refusing to shower or use the restroom at his normal time and staying awake all night with the television on to deter nighttime attacks. *Id.* at 29-32. Plaintiff concluded the "jailhouse lawyer" must have shared his habeas petition with prison personnel who shared it with the prosecutor and detective that secured his conviction. *Id.* at 32-34. He further concluded that these individuals plotted to have him murdered to prevent his Brady claim from being added in his amended habeas petition. *Id.* at 32-33. He further claims as a reward for sharing his materials, the "jailhouse lawyer" was granted parole. *Id.* at 34. However, Plaintiff alleges that to disguise his absence and conceal his collaboration with authorities, prison personnel gave the "jailhouse lawyer" a conduct report and told other inmates that he was in segregation. *Id.* at 36. He contends when he became suspicious of this explanation, prison personnel brought the inmate back to prison. *Id.* He indicates that he learned the details of this plot from other inmates in his dorm. *Id.* at 37. He was eventually transferred from the North Central Correctional Institution to the Richland Correctional Institution. *See Ahreshien v. Watson*, No. 22 CV 1303 (N.D. Ohio) (Doc. 50) (Sept. 23, 2024).

Plaintiff asserts only one claim for relief. He contends he was denied access to the courts in violation of his First Amendment rights. (Doc. 1, at 3, 13).

### STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the function of the Court is to test the legal sufficiency of the complaint. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). The Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) clarified the law regarding what a plaintiff must plead to survive a motion to dismiss under Rule 12(b)(6).

4

To determine whether the plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. The Court, however, has discretion to refuse to unquestioningly accept the truth of plaintiff's allegations when they are "clearly baseless," a term encompassing claims that may be fairly described as "fanciful," "fantastic," "delusional," "wholly incredible," or "irrational." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 1831–33 (1989)). The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*. (internal citations omitted). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court in *Iqbal* further explained the "plausibility" requirement, stating that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. Determining whether a plaintiff's pleadings meet this standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The Sixth Circuit has held that a court may consider allegations contained in the Complaint, as well as exhibits attached to or otherwise

incorporated in the Complaint, all without converting a motion to dismiss to a motion for summary judgment. *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997); *see* Fed. R. Civ. P. 10(c).

**DISCUSSION**

Plaintiff fails to allege facts that suggest he was denied access to the courts by Defendants.[3] To state a claim for denial of access to the courts, Plaintiff must allege Defendants' acts prevented him from pursuing or caused the rejection of a specific non-frivolous direct appeal, habeas corpus petition, or civil rights action. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The right of access to the courts is directly related to an underlying claim, without which a Plaintiff cannot have suffered injury by being shut out of court. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Plaintiff must therefore "plead and prove prejudice stemming from the asserted violation." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). In other words, he must demonstrate "actual injury" by showing that his underlying claim was non-frivolous, and that it was frustrated or impeded by Defendants. *Lewis*, 518 U.S. at 353. "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Christopher*, 536 U.S. at 415.

The Defendants in this case are the North Central Correctional Institution Warden Tom Watson, Deputy Warden James Craig, Inspector Lorri Schuler, Case Manager Kelly Emptage, and two unidentified corrections officers. Plaintiff alleges in a very general manner the "jailhouse lawyer" met with "prison officials". *See* Doc. 1, at 28. He does not identify these "prison officials" or in any way connect the named Defendants to these actions he describes in the Complaint.

---

3. As an initial matter, Plaintiff's allegations, at times, appear delusional. It is wholly incredible that the detective who arrested Plaintiff in 2018 and the prosecutor who obtained his conviction in 2019 would plot with another inmate to have him murdered to prevent him from amending his federal habeas petition to restate his ineffective assistance of counsel claim.

6

Furthermore, Plaintiff was not prevented from pursuing his claim. He was represented by counsel during his habeas proceedings and could have had his attorney prepare his Amended Petition or his Traverse. He instead chose to prepare his own Traverse with the help of the "jailhouse lawyer." Plaintiff, however, did not file the Traverse despite being granted several extensions from the Court to do so. Instead, he moved the Court for permission to file an Amended Petition on February 12, 2024. The Court granted that Motion on March 12, 2024. Despite filing multiple other Motions and seeking extensions, Plaintiff did not file an Amended Petition. The Magistrate Judge considered his original Petition and issued a Report and Recommendation ("R&R") recommending it be denied on May 9, 2025. Plaintiff filed objections thereto and on August 21, 2025, the Court issued a Memorandum Opinion and Order adopting the R&R and denying the Petition. There are simply no facts alleged in the Complaint plausibly suggesting any of the Defendants prevented him from pursuing his claims.

Finally, Plaintiff fails to state a claim for relief under 42 U.S.C. § 1985. To establish a violation of § 1985, Plaintiff must allege facts plausibly suggesting the Defendants conspired together for the purpose of depriving the Plaintiff of the equal protection of the laws and committed an act in furtherance of the conspiracy which was motivated by racial or other class-based invidiously discriminatory animus. *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999). Plaintiff fails to allege any facts suggesting the named Defendants conspired together. They are not mentioned in the body of the Complaint. In addition, to succeed on that claim under § 1985, Plaintiff must allege that the conspiracy was motivated by discriminatory animus against an identifiable class. The Complaint does not contain any allegations plausibly suggesting that there was a conspiracy between the named Defendants that was motivated by Plaintiff's race or membership in a protected class.

**CONCLUSION**

For the foregoing reasons, good cause appearing it is

ORDERED that Defendants' Motion to Dismiss (Doc. 4) be, and the same hereby is, GRANTED and this action is dismissed; and the Court

FURTHER CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: April 20, 2026

8